**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0925-18T4

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

PAUL W. BENSON,

 Defendant-Appellant.

_____

    Argued October 29, 2019 – Decided December 10, 2019

    Before Judges Yannotti and Firko.

    On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Accusation No. 10-09-1568.

    Michael C. Woyce argued the cause for appellant (Murphy & Woyce, attorneys; Michael C. Woyce, on the brief).

    Nicole Paton, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; Nicole Paton, of counsel and on the brief).

PER CURIAM

Defendant appeals from an order of the Law Division dated October 19, 2018, which denied his motion to withdraw his guilty plea and his petition for post-conviction relief. We affirm.

I.

In April and July 2009, defendant shared several files containing child pornography in an online chat room with an undercover detective of the Suffolk County Police Department. The detective subsequently referred the matter to the Bergen County Prosecutor's Office, which conducted an investigation that identified defendant's residence as the source of the child pornography files.

On October 15, 2009, law enforcement executed a search warrant on defendant's home and arrested defendant. Defendant's computer contained numerous images of child pornography, which depicted, among other things, full body nudity and sexual assaults.

Defendant was charged in a complaint-warrant with second-degree endangering the welfare of a child by transmitting child pornography, N.J.S.A. 2C:24-4(b)(5)(a); and fourth-degree endangering the welfare of a child by possessing child pornography, N.J.S.A. 2C:24-4(b)(5)(b). Thereafter, defendant's attorney negotiated a plea agreement, which required defendant to plead guilty to a single charge of third-degree endangering the welfare of a child

under N.J.S.A. 2C:24-4(a).[1]  The State agreed to recommend a sentence of 364 days in county jail; compliance with the registration and community notification requirements of Megan's Law, N.J.S.A. 2C:7-1 to -23; and Parole Supervision for Life (PSL), N.J.S.A. 2C:43-6.4(a).

On September 27, 2010, defendant pled guilty to one count of endangering the welfare of a child under N.J.S.A. 2C:24-4(a), as charged in Accusation No. 10-09-1568.  At the plea hearing, defendant provided the factual basis for his plea in response to questions by his attorney and the assistant prosecutor:

> [Defense Counsel]: Directing your attention to the accusation in this case, the specific allegations therein, do you admit, and is it true, that, on April 3, 2009 and July 24, 2009, from your computer at your home in Woodcliff Lake, by virtue of a file trading program, that you knowingly shared images and videos containing child pornography to another person who happened to be an undercover law enforcement person, which images depicted children under the age of [sixteen] in acts of sexual penetration and nudity for purposes of sexual stimulation, and that, as a result of that, you impaired the morals of the children engaged in those

---

[1]  N.J.S.A. 2C:24-4(a) was amended in 2013.  In relevant part, the 2013 amendment divided section (a) into subsections (1) and (2).  L. 2013, c. 51, § 13.  The current version of subsection (1) is substantially the same as the statute in effect when defendant committed the offense.  Compare N.J.S.A. 2C:24-4(a) (2010), with N.J.S.A. 2C:24-4(a)(1) (2019).  In this opinion, we cite to the 2010 version of the statute.

acts and therefore endangered the welfare of those children; do you admit that or do you deny that?

[Defendant]: I admit that.

[Defense counsel]: Is it true?

[Defendant]: Yes, sir.

. . .

[Assistant Prosecutor]: Th[e]re – were a lot of facts in that particular question. You weren't – you're admitting to every single component of that; is that correct?

[Defendant]: Yes, sir.

[Assistant Prosecutor]: And these children that appeared to be under the age of [sixteen], they, in fact, looked like they were real; those weren't photo-shopped or anything like that to your knowledge; is that correct?

[Defendant]: That is correct.

[Assistant Prosecutor]: Many of them looked like real children.

[Defendant]: Yes, sir.

The judge accepted the plea. On May 20, 2011, the judge sentenced defendant to 364 days in jail, required compliance with Megan's Law, sentenced defendant to PSL, and imposed applicable fines and penalties.

In 2012, the trial court found that for purposes of Megan's Law, defendant's risk assessment score placed him in the "middle range" of "risk to

4

reoffend."  The resulting tier classification required notification to local law enforcement, educational institutions and other organizations, and defendant's placement on the Internet registry.  Defendant appealed the trial court's determination.  We remanded the matter for classification of defendant in the "low range" of "risk to reoffend" and application of appropriate registration and notification standards.  In re Registrant P.B., 427 N.J. Super. 176, 189 (App. Div. 2012).

In June 2018, defendant filed a motion to vacate his guilty plea and a petition for post-conviction relief (PCR).  The PCR judge heard oral argument and denied both applications in a written opinion.  The judge memorialized his decision in an order dated October 19, 2018.  This appeal followed.  On appeal, defendant argues:

> POINT I
> THE PCR COURT ERRED IN CONCLUDING THAT THE LANGUAGE OF [N.J.S.A. 2C:24-4(a)], THE GENERAL ENDANGERING THE WELFARE OF A CHILD STATUTE, PROHIBITED THE POSSESSION AND DISTRIBUTION OF CHILD PORNOGRAPHY WHICH IS SPECIFICALLY PENALIZED IN A SEPARATE AND DISTINCT SUBSECTION.
>
> POINT II
> THE PCR COURT ERRED IN CONCLUDING THAT THE FACTUAL BASIS MET THE ELEMENTS UNDER [N.J.S.A. 2C:24-4(a)] WHERE

[DEFENDANT] DID NOT ENGAGE IN PROHBITED SEXUAL CONDUCT.

POINT III
THE PCR COURT ERRED IN CONCLUDING THAT THERE WAS A FUNDAMENTAL INJUSTICE WHERE [DEFENDANT] WAS [SENTENCED TO PSL] AS A RESULT OF PLEA COUNSEL COUNSELLING HIM TO ACCEPT A PLEA TO AN OFFENSE FOR WHICH A FACTUAL BASIS COULD NOT BE ELICITED.

POINT IV
THE PCR COURT ERRED IN FINDING THAT PLEA COUNSEL'S PERFORMANCE WAS NOT DEFECTIVE AND THEREBY DENYING THE PETITION WIHTOUT AN EVIDENTIARY HEARING WHERE [DEFENDANT] WAS:

1) MISINFORMED [ABOUT] THE APPLICABILITY OF [PSL];

2) ADVISED THAT [A] SENTENCE UNDER [N.J.S.A. 2C:24-4(a)] OR [N.J.S.A. 2C:24-4(b)(5)(B)] WOULD INCLUDE THE SPECIAL SENTENCE OF PAROLE SUPERVISION; AND

3) ADVISED TO TAKE A PLEA TO [N.J.S.A. 2C:24-4(a)] WITHOUT HAVING COMMITTED AN ACT OF "SEXUAL CONDUCT."

## II.

We turn first to defendant's argument that the trial court erred by denying his motion to vacate the guilty plea. He contends he did not provide an adequate factual basis for a plea to endangering the welfare of a child under N.J.S.A.

2C:24-4(a). In October 2009, when defendant committed the offense, the statute provided that:

> Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of a child, or who causes the child harm that would make the child an abused or neglected child . . . is guilty of a crime of the second degree. Any other person who engages in conduct or who causes harm as described in this subsection to a child under the age of [sixteen] is guilty of a crime of the third degree.

> [Ibid.]

Defendant contends possession and distribution of child pornography is not "sexual conduct which would impair or debauch the morals of a child," under N.J.S.A. 2C:24-4(a). We disagree.

A person cannot be convicted for violating a criminal statute "unless he has been convicted at trial or he has admitted his guilt through the entry of a plea." State v. Tate, 220 N.J. 393, 405 (2015). "[A]t a plea hearing, a judge must be satisfied that the defendant has given a factual account that makes him guilty of the crime." Ibid. (citing R. 3:9-2). "A factual basis for a plea must include either an admission or the acknowledgement of facts that meet 'the essential elements of the crime.'" Id. at 406 (quoting State ex rel. T.M., 166 N.J. 319, 333 (2001)).

7

"The remedy for an inadequate factual basis is an order vacating the guilty plea and restoring both parties to their positions prior to the trial court's acceptance of the plea"; that is, "the plea, the judgment of conviction, and the sentence must be vacated, the dismissed charges [must be] reinstated, and defendant [should be] allowed to re-plead or to proceed to trial." State v. Campfield, 213 N.J. 218, 232 (2013) (citing State v. Barboza, 115 N.J. 415, 420 (1989)).

"The standard of review of a trial court's denial of a motion to vacate a guilty plea for lack of an adequate factual basis is de novo." Tate, 220 N.J. at 403-04 (citing Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995)). We exercise de novo review because we are "in the same position as the trial court [whe]n assessing whether the factual admissions during a plea colloquy satisfy the essential elements of an offense." Id. at 404.

Furthermore, to determine whether defendant's factual admissions established the essential elements of the offense, we must interpret N.J.S.A. 2C:24-4(a). Our interpretation of the statute is de novo. Id. at 405 (citing Willingboro Mall, Ltd. v. 240/242 Franklin Ave., L.L.C., 215 N.J. 242, 253 (2013)). Therefore, we owe no deference to the trial court's legal conclusions. Willingboro Mall, 215 N.J. at 253.

"The role of [a c]ourt in statutory interpretation 'is to determine and effectuate the Legislature's intent.'" Marino v. Marino, 200 N.J. 315, 329 (2009) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009)). We begin our analysis by considering the plain language of the statute, reading the words in accordance with their ordinary meaning, and "seeking further guidance only to the extent that the Legislature's intent cannot be derived from the words it has chosen." Ibid. (quoting Pizzullo v. N.J. Mfrs. Ins., 196 N.J. 251, 264 (2008)).

As noted previously, N.J.S.A. 2C:24-4(a) provided that a person may be found guilty of endangering the welfare of a child if he engages in "sexual conduct which would impair or debauch the morals of the child . . . ." The term "sexual conduct" is not defined in the statute, but it includes "sexual assaults and sexual contact." State v. Perez, 177 N.J. 540, 553 (2003).

The statute also encompasses some "forms of sexual conduct [that] are by their nature more ambiguous, and involve no touching of the child . . . ." State v. Bryant, 419 N.J. Super. 15, 24 (App. Div. 2011). Indeed, in State v. Hackett, 166 N.J. 66, 70-71, 76 (2001), the Court held that the defendant engaged in "sexual conduct" under N.J.S.A. 2C:24-4(a), when he exposed his genitals in front of a window in his home, where he could be seen by children waiting outside. See also State v. White, 105 N.J. Super. 234, 236-37 (App. Div. 1969)

9

(holding that a person who displayed explicit photos of adults to children engaged in "sexual conduct" under N.J.S.A. 2A:96-3, the predecessor to N.J.S.A. 2C:24-4(a)).

Here, defendant's factual admissions established that his possession of child pornography was "sexual conduct." Defendant admitted he possessed and distributed images of children, some of whom were less than sixteen years old. The pornography included depictions of children who were naked and others being subjected to acts of sexual penetration. Some of the children appeared to be under the age of sixteen. Defendant admitted he possessed these images for sexual stimulation.

Defendant's factual admissions also established that his conduct "would impair or debauch the morals of the child . . . ." N.J.S.A. 2C:24-4(a). As we noted in P.B., a market for child pornography "is essential in order to support [its] production and distribution." P.B., 427 N.J. Super. at 183 (citing United States v. Meiners, 485 F.3d 1211, 1213 (9th Cir. 2007); In re Registrant J.W., 410 N.J. Super. 125, 140 (App. Div. 2009)).

By participating in the market for child pornography, defendant fostered the production of these materials. Therefore, he engaged in conduct "which would impair or debauch the morals" of the children who were used to create

these pornographic images.  In his plea colloquy, defendant admitted that he impaired the morals of the children depicted in the pornography he possessed and distributed.

In arguing that his factual admissions did not establish a basis for conviction under N.J.S.A. 2C:24-4(a), defendant relies upon State v. Sisler, 177 N.J. 199 (2003).  Defendant's reliance upon Sisler is misplaced.  In that case, the Court held that in N.J.S.A. 2C:24-4(b), the Legislature intended to impose more severe penalties upon individuals who create, distribute, or sell child pornography, than upon individuals who possess such materials.  Id. at 207.  That may be so, but possession and distribution of child pornography nevertheless remains "sexual conduct that impairs or debauches the morals of the child" under N.J.S.A. 2C:24-4(a).

In support of his argument, defendant also relies upon P.B.  As noted previously, in that case, defendant challenged the risk assessment analysis used for his tier classification under Megan's Law.  P.B., 427 N.J. Super. at 180, 185.  A registrant's "degree of contact" with the victim of a sexual offense is one of the factors in the risk assessment.  Id. at 182.

In P.B., we held that the "high risk" standard of "penetration" under the risk analysis was not satisfied if "a registrant merely possessed depictions of

penetrative sexual activity with children, without any concomitant indication that [the registrant] played a role in the penetrative activity either as a participant or a producer." Id. at 182-83. We stated that the simple act of possessing child pornography does not have "the same heinous qualities as generating them." Id. at 183 (citing Sisler, 177 N.J. at 208).

P.B. does not, however, address the question raised in this appeal, which is whether possession and distribution of child pornography is "sexual conduct which would impair or debauch the morals of the child" under N.J.S.A. 2C:24-4(a). Although possession and distribution of child pornography may be less heinous than the production of such materials, the conduct nevertheless comes within the purview of N.J.S.A. 2C:24-4(a).

We therefore conclude that defendant provided an adequate factual basis for his guilty plea under N.J.S.A. 2C:24-4(a). Accordingly, the trial court did not err by denying defendant's motion to vacate his guilty plea.

III.

We next consider defendant's argument that the court erred by denying his petition for PCR. He contends he presented a prima facie case of ineffective assistance of counsel, and the PCR court should have conducted an evidentiary hearing on his petition. Again, we disagree.

A defendant is entitled to an evidentiary hearing on a PCR petition if he or she establishes a prima facie case in support of PCR, the court finds "that there are material issues of disputed fact that cannot be resolved by reference to the existing record," and the court determines "that an evidentiary hearing is necessary to resolve the claims for relief." State v. Porter, 216 N.J. 343, 354 (2013) (quoting R. 3:22-10(b)).

Furthermore, a defendant establishes a prima facie case for PCR if he or she shows "a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." Id. at 355 (quoting R. 3:22-10(b)).

The standard for establishing ineffective assistance of counsel is "the same under both the Federal and State Constitutions." State v. Pierre, 223 N.J. 560, 578 (2015) (quoting State v. O'Neil, 219 N.J. 598, 610 (2014)). To prevail on the claim, a defendant must meet the two-pronged test articulated in Strickland v. Washington, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair

A-0925-18T4

trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

[Id. at 687.]

The defendant first must show that his "counsel's representation fell below an objective standard of reasonableness." Id. at 688. The defendant must show that counsel's "acts or omissions were outside the wide range of professionally competent assistance." Id. at 688, 690. There is, however, a "strong" presumption that counsel provided adequate assistance and exercised reasonable professional judgment in his handling of the case. Id. at 690.

Even a "professionally unreasonable" error by counsel does not warrant setting aside a criminal conviction "if the error had no effect on the judgment." Id. at 691. Therefore, under the second prong of the Strickland test, the defendant must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Ibid.

It is well established that the Strickland standard applies to claims of ineffective assistance of counsel associated with a guilty plea. State v. Gaitan,

14

209 N.J. 339, 350-51 (2012) (citing Hill v. Lockhart, 474 U.S. 52, 57 (1985)). To establish the prejudice prong under Strickland in the context of a plea, a defendant must establish that "there is a reasonable probability that, but for counsel's errors, [he or she] would not have pled guilty and would have insisted on going to trial." Id. at 351 (quoting State v. Nuñez-Valdez, 200 N.J. 129, 139 (2009)). A defendant must show that it would have been rational to reject the plea offer and insist on going to trial and, that, "he probably would have done so . . . ." State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011).

Here, defendant claims he was denied the effective assistance of counsel because plea counsel: (1) misinformed him regarding the applicability of PSL to the offenses with which he was initially charged; (2) erroneously advised him that a conviction under either N.J.S.A. 2C:24-4(a) or 2C:24-4(b)(5)(b) would carry a sentence of PSL; and (3) erroneously advised him to plead guilty to an offense without a sufficient factual basis for the necessary prima facie elements.

The PCR court found that defendant's plea counsel had skillfully negotiated with the State in order to avoid a lengthy State-prison sentence. The court noted that if defendant had been convicted of second-degree endangering the welfare of a child by transmitting child pornography, N.J.S.A. 2C:24-4(b)(5)(a), as initially charged, he would have been sentenced to a term of five

15

to ten years in State prison, whereas defendant's conviction for third-degree endangering under N.J.S.A. 2C:24-4(a) allowed defendant to avoid a lengthy prison term.

Here, the State agreed to recommend that defendant be sentenced to a term of 364 days in county jail, but the sentence would include PSL. As the PCR court pointed out in its opinion, at sentencing, the judge noted that if defendant had been convicted of the second-degree offense as initially charged, he would not be subject to PSL, but would have been sentenced to a minimum of five years in State prison.

The sentencing judge also noted that by pleading guilty to endangerment under N.J.S.A. 2C:24-4(a), defendant would be subject to PSL, but a State prison term would not be imposed. Defendant stated that he understood.

The PCR court found that defendant was aware of his options and entered the plea agreement to limit the time he would spend in jail. The court also found that defendant was not misadvised or misinformed concerning PSL, and he entered the plea knowingly and voluntarily.

The PCR court further found that plea counsel was diligent in explaining the consequences of the plea to defendant. The court noted that defendant had signed the plea forms, provided an adequate factual basis for the plea, and

16

admitted on the record that he was satisfied with the services his plea counsel had provided. The court concluded that defendant failed to satisfy the first prong on the <u>Strickland</u> test.

In addition, the PCR court found that defendant failed to satisfy the second prong on the test for ineffective assistance of counsel. He did not show that but for counsel's alleged errors, he would have rejected the plea offer and insisted on going to trial. As the court noted, defendant claimed that if he had been aware he could have avoided PSL if he pleaded guilty to a different subsection of the endangering statute, he would have rejected the State's plea offer.

The court found, however, that plea counsel made reasonable efforts to avoid imposition of a lengthy prison sentence. The court stated:

> Here, the State had a strong provable case. [Defendant] had gigabytes of child pornography directly on his computer[. H]e used a peer to peer file sharing application to store and share images, [and] directly shared images and interacted with an undercover officer in a chat[ ]room. When the police arrived at [defendant's] home he admitted that he knew why they were at his home and law enforcement found his computer system running child pornography when they walked through the door.

The court stated that defendant had not shown a rational person in his position would not have accepted the plea agreement and would have instead insisted on going to trial.

We are convinced that the record supports the court's findings. The record shows that defendant was not misadvised regarding PSL. He knew his options but agreed to plead guilty to endangering the welfare of a child under N.J.S.A. 2C:24-4(a) knowing that he would be sentenced to PSL, rather than plead to another offense which would result in a longer prison sentence but not include PSL.

Moreover, as stated previously, defendant's factual admissions established the essential elements of N.J.S.A. 2C:24-4(a). Therefore, the PCR court correctly determined that defendant failed to establish his claim of ineffective assistance of counsel, and an evidentiary hearing was not required.

IV.

Defendant further argues that the PCR court erred by finding that his petition was barred under Rule 3:22-12(a)(1). As noted previously, defendant did not file his petition within five years after the entry of the judgment of conviction, as required by the rule. The court found that defendant failed to establish excusable neglect, or that enforcement of the time-bar would result in a fundamental injustice. However, since the PCR court considered the merits of defendant's claims and correctly determined that defendant had not

18

established a right to relief, we need not consider defendant's argument on this point.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION