**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-5528-16T2
      A-0172-17T3

RASHONNA COSBY-HURLING,
PETER BROWN, DEREK
ARMSTEAD, RICHARD KOZIOL,
CHRISTOPHER KOLIBAS, ADAM
KUCZYNSKI, ROBERT SADOWSKI,
ARMANDO MEDINA and MICHELLE
YAMAKAITIS,

  Petitioners-Appellants,

and

JOHN D. SHEEHY, JR. and
RICHARD GERBOUNKA,

  Petitioners,

v.

LOCAL FINANCE BOARD,

  Respondent-Respondent.

_____

Submitted July 24, 2018 – Decided January 18, 2019

Before Judges Ostrer and Vernoia.

On appeal from the Local Finance Board, Department of Community Affairs.

Kologi Simitz, attorneys for appellant Peter Brown (Edward J. Kologi and Michael S. Simitz, of counsel and on the brief).

Eric M. Bernstein & Associates, LLC, attorneys for appellants Rashonna Cosby-Hurling, Derek Armstead, Richard Koziol, Christopher Kolibas, Adam Kuczynski, Robert Sadowski, Armando Medina and Michelle Yamakaitis (Dominic P. DiYanni, of counsel and on the brief; Stephanie M. Platt, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Cameryn J. Hinton, Deputy Attorney General, on the briefs).

The opinion of the court was delivered by

VERNOIA, J.A.D.

In these appeals, consolidated for purposes of this opinion, City of Linden (City) Council members Peter Brown, Rashonna Cosby-Hurling, Derek Armstead, Richard Koziol, Christopher Kolibas, Adam Kuczynski, Robert Sadowski, Armando Medina and Michelle Yamakaitis (collectively, appellants) appeal[1] from an October 19, 2016 Local Finance Board final agency decision finding they violated N.J.S.A. 40A:9-22.5(c) by using their official positions to

---

[1] Brown's appeal is under docket number A-5228-16. The remaining appellants' appeal is under docket number A-0172-17.

secure an unwarranted privilege for City Council member John Sheehy (Sheehy). We affirm in part and reverse in part the Board's order as to Brown (A-5228-16), and affirm in part and reverse in part the Board's order as to the remaining appellants (A-0172-17) and remand for further proceedings in both matters.

I.

In March 2014, the Board issued notices of investigation to Sheehy, the City's Mayor Richard Gerbounka and appellants advising in pertinent part of an investigation of an alleged violation of N.J.S.A. 40A:9-22.5(c), which prohibits "local government officer[s] . . . [from] us[ing] or attempt[ing] to use his [or her] official position to secure unwarranted privileges or advantages for . . . others." The notices explained the Board was investigating a complaint that at a May 21, 2013 City Council meeting, appellants voted to adopt a resolution accepting bids from a May 7, 2013 sale of tax sale certificates on various City properties, but acted in their official capacities as Council members to confer an unwarranted benefit on Sheehy by approving the deletion of a bid for a tax sale certificate on property he owned[2] from the list of bids being considered for

_____

[2] The property is owned by Sheehy and his brother.

approval. The notice of investigation allowed the submission of written responses by each of the appellants.

In February 2015, following its investigation, the Board issued notices to appellants charging they violated N.J.S.A. 40A:9-22.5(c) and imposing a $100 fine.[3] The notices alleged appellants voted to approve Resolution 2013-20, which accepted bids for tax sale certificates on various properties in the City, but which also expressly eliminated the acceptance of the bid for the tax sale certificate for Sheehy's property from the Council's consideration and approval. The notices charged that appellants used or attempted to use their offices as Council members to secure an unwarranted privilege or advantage for Council member Sheehy.[4] Appellants disputed the allegations and their matters were referred to the Office of Administrative Law. The matters were assigned to an Administrative Law Judge (ALJ), who consolidated the matters in a single proceeding.

---

[3] Brown's notice included an additional claim he violated N.J.S.A. 40A:9-22.5(d). The Board later dismissed that charge against Brown.

[4] We do not address the notices of violation sent to Sheehy and Gerbounka. Sheehy did not challenge the alleged violations and the Board's imposition of a $500 fine. The Board dismissed its claim Gerbounka violated N.J.S.A. 40A:9-22.5(d) and withdrew its notice of violation against him.

The Board subsequently moved before the ALJ for a summary decision finding each appellant violated N.J.S.A. 40A:9-22.5(c). Appellants cross-moved for a summary decision dismissing the notices of the alleged violations.

The information[5] submitted to the ALJ showed that in April 2013, the City's tax collector provided public notice of a May 7, 2013 auction of twenty-eight municipally-held tax sale certificates pursuant N.J.S.A. 54:5-114.2, which authorizes municipalities to sell tax sale certificates to the highest bidder. The City notified the affected property owners of the amounts required to redeem the certificates and allowed the property owners to either redeem the certificates or advise that the property was under contract to be sold prior to the auction. Fourteen property owners redeemed the certificates. None of the remaining property owners advised the City that their property was under contract to be sold prior to the auction. Following the auction on May 13, 2013, the tax collector advised Gerbounka that the bids for the remaining fourteen tax sale certificates should be accepted.

---

[5] The information submitted to the ALJ in support of the motions for summary decision consisted of an affidavit from the City's tax collector generally describing the process the City followed for the auction of the tax sale certificates and the City Council's acceptance of bids at the May 21, 2013 meeting, and various reports, records, letters and statements of position submitted by and on behalf of Brown, Sheehy, and certain of the appellants, all of which were submitted to the Board investigation.

A resolution accepting the bids was scheduled for approval by the City Council at its May 21, 2013 meeting. During a conference meeting held on May 20, 2013, the tax collector recommended approval of the bids and provided a draft resolution accepting the bids. Attached to the resolution was a list of the affected properties that included the amount of the tax sale certificate and bid. Sheehy's tax sale certificate and property were among those listed.

Evidence presented to the ALJ further showed that Sheehy told Brown he had a potential buyer for his property, and while he had not entered into a contract for sale, he intended to pay his tax debts with the proceeds from the sale. The evidence also showed Gerbounka discussed Sheehy's property with Brown, and told Brown properties under contracts for sale should be excluded from the accepted bid list and that Sheehy's "was such a property." Although Sheehy's property was not actually under contract for sale, the bid for the tax sale certificate for Sheehy's property was removed from the list of bids to be accepted from those submitted at the May 7, 2013 auction.

A revised resolution was presented the next evening at the Council's May 21, 2013 meeting. It provided for the approval of all of the May 7, 2013 bids for the sale of the tax sale certificates "with the exception of" the tax sale certificate for Sheehy's property. Appellants voted unanimously to approve the

resolution. As a result, the tax sale certificate on Sheehy's property was never sold. Two years later, the outstanding municipal taxes were paid in full.

In her written decision, the ALJ found that prior to the May 21, 2013 meeting, Brown and Sheehy discussed Sheehy's property, and Sheehy said "it was listed for sale and had a potential buyer" and he "would pay off the taxes once the property was sold." The ALJ also found that in Brown's statement to the Board, he said that Gerbounka told him that "properties that were under contract for sale should be removed from the list, including Sheehy's." The ALJ further found that following those conversations, the resolution was modified to delete the bid for tax sale certificate on Sheehy's property.

The ALJ also found that Cosby-Hurling, Armstead, Koziol, Kolibas, Kuczynski and Medina "did not realize that Sheehy's property was excluded from the tax sale list when they approved the resolution." The ALJ did not mention Sadowski and Yamakaitis.

The ALJ determined that Sheehy was provided with a financial benefit and advantage by the removal of his property from the resolution because had the bid on the tax sale certificate been accepted, Sheehy would have not only been required to pay the delinquent taxes, he also would have been obligated to repay the certificate purchaser with interest. The ALJ concluded that appellants

7

"violated N.J.S.A. 40A:9-22.5(c) . . . by approving the resolution rejecting the bid for the tax lien on Sheehy's property" and thereby giving "him an unwarranted advantage."

The ALJ granted the Board's motion for summary decision finding Cosby-Hurling, Armstead, Koziol, Kolibas, Kuczynski and Medina violated N.J.S.A. 40A:9-22.5(c), but again did not make any express finding as to Sadowski and Yamakaitis. The ALJ denied appellant's cross-motion for summary decision dismissing the notices charging them with violating N.J.S.A. 40A:9-22.5(c).[6]

In its final decision, the Board adopted the findings and conclusions of the ALJ, with an added finding that Sadowski and Yamakaitis also violated N.J.S.A. 40A:9-22.5(c) by voting for the May 21, 2013 modified resolution.[7] The Board imposed a $100 fine on each appellant. Brown appealed, and the remaining appellants filed a separate appeal.

Brown offers the following argument for our consideration on appeal.

LEGAL ARGUMENT

THE LOCAL FINANCE BOARD ERRED IN AFFIRMING THE ADMINISTRATIVE LAW

---

[6] The ALJ granted Brown's motion for summary decision dismissing the charge that he violated N.J.S.A. 40A:9-22.5(d).

[7] The Board's final decision includes other modifications to the ALJ's decision that are not relevant to the disposition of this appeal.

JUDGE'S INITIAL DECISION AS APPELLANT DID
NOT VIOLATE N.J.S.A. 40a:9-22.5(C)[.]

The remaining appellants offer the following arguments for our consideration.

POINT I

STANDARD OF REVIEW.

POINT II

The petitioner/appellants present ample facts to suggest that there can be no finding of summary decision in favor of the respondent/appellee and that summary decision must be granted in favor of the herein petitioners as there was no violation of N.J.S.A. 40A:9-22.5(c)[.]

II.

Our standard of review of final decisions of State administrative agencies is well-settled. The "final determination of an administrative agency . . . is entitled to substantial deference." In re Eastwick Coll. LPN-to-RN Bridge Program, 225 N.J. 533, 541 (2016). An appellate court may only reverse if the decision of the administrative agency is "'arbitrary, capricious, or unreasonable,' the determination 'violate[s] express or implied legislative policies,' the agency's action offends the United States Constitution or the State Constitution, or 'the findings on which [the decision] was based were not supported by substantial,

credible evidence in the record.'" Ibid. (alterations in original) (quoting Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't of Envtl. Prot., 191 N.J. 38, 48 (2007)). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the person challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006). A reviewing court, however, "is not bound by an agency's determination of a legal issue." In re Zisa, 385 N.J. Super. 188, 195 (App. Div. 2006).

The Local Government Ethics Law, N.J.S.A. 40A:9-22.1 to -22.25, was enacted in 1991 "to codify a set of guidelines designed to limit actions by local officials that might create doubt in the minds of citizens concerning the motivations of those officials." Wyzykowski v. Rizas, 132 N.J. 509, 536 (1993) (Clifford, J., dissenting in part). At issue here is the Board's interpretation and application of N.J.S.A. 40A:9-22.5(c), which states "[n]o local government officer or employee shall use or attempt to use his [or her] official position to secure unwarranted privileges or advantages for himself[, herself,] or others." N.J.S.A. 40A:9-22.5(c). A privilege is unwarranted when it is "unjustified or unauthorized, one that would permit the municipal official to obtain something otherwise not available to the public at large." In re Zisa, 385 N.J. Super. at 196.

Relying on an unpublished and non-precedential decision from this court, see R. 1:36-3, the ALJ appears to have concluded that a violation of N.J.S.A. 40A:9-22.5(c) does not require proof that a government officer or employee act with a specific state of mind. Although unclear from the ALJ's and Board's decision, it is based on that interpretation of N.J.S.A. 40A:9-22.5(c) that they apparently determined appellants Cosby-Hurling, Armstead, Koziol, Kolibas, Kuczynski, Medina, Sadowski and Yamakaitis violated the statute based on evidence showing nothing more than they voted in favor of the May 21, 2013 resolution. The ALJ and Board's interpretation of the statute, however, constitutes a legal conclusion that is entitled to no special deference. See Gallenthin Realty Development, Inc. v. Borough of Paulsboro, 191 N.J. 344, 358 (2007) (holding the interpretation of a statute presents a legal determination).

In the interpretation of a statute, discerning the Legislature's intent is the "paramount goal." DiProspero v. Penn, 183 N.J. 477, 492 (2005). "In most instances, the best indicator of that intent is the plain language chosen by the Legislature." State v. Gandhi, 201 N.J. 161, 176 (2010) (citing DiProspero, 183 N.J. at 492). Where that plain language "leads to a clear and unambiguous result, then our interpretive process is over." Richardson v. Bd. of Trs., Police &

Firemen's Ret. Sys., 192 N.J. 189, 195 (2007). "It is not the function of this Court to 'rewrite a plainly-written enactment of the Legislature []or presume that the Legislature intended something other than that expressed by way of the plain language.'" DiProspero, 183 N.J. at 492 (alteration in original) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)).

The plain and unambiguous language of N.J.S.A. 40A:9-22.5(c) prohibits governmental officers' or employees' use or attempt to use their official position, but only when done so for a purpose: "to secure unwarranted privileges or advantages for himself or others." N.J.S.A. 40A:9-22.5(c). The ALJ's interpretation of N.J.S.A. 40A:9-22.5(c) ignores the statute's simple and clear language and renders the phrase "to secure unwarranted privileges or advantages for himself or others" superfluous. See State v. Twiggs, 233 N.J. 513, 532 (2018) (explaining that courts should avoid interpreting a statute in a manner rendering any part of the statute superfluous). We reject the ALJ's interpretation and find that a violation of N.J.S.A. 40A:9:22.5(c) requires proof that the governmental officer or employee used or attempted to use his or her official position with the purpose "to secure unwarranted privileges or advantages for himself [or herself] or others." See, e.g., State v. McCoy, 116 N.J. 293, 304 (1989) (quoting State v. McAllister, 211 N.J. Super. 355, 362 (App. Div. 1986))

("[O]ne cannot logically attempt to cause a particular result unless causing that result is one's 'conscious object,' the distinguishing feature of a purposeful mental state.").

With the correct interpretation of N.J.S.A. 40A:9-22.5(c) in mind, we consider the Board's decision granting summary decision on the charge they each violated the statute and the Board's determination appellants were not entitled to summary decision on appellants' cross-motion for summary decision dismissing the charges. Consideration of a motion for summary decision is governed by N.J.A.C. 1:1-12.5(b), which in relevant part provides:

> The motion for summary decision shall be served with briefs and with or without supporting affidavits. The decision sought may be rendered if the papers and discovery which have been filed, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to prevail as a matter of law. When a motion for summary decision is made and supported, an adverse party in order to prevail must by responding affidavit set forth specific facts showing that there is a genuine issue which can only be determined in an evidentiary proceeding.
>
> [N.J.A.C. 1:1-12.5(b)].

"Because an agency's summary decision is a legal determination, our review is de novo." L.A. v. Bd. of Educ. of City of Trenton, 221 N.J. 192, 204 (2015). The standard for granting summary decision is "substantially the same"

13

as that governing a motion for summary judgment in a civil proceeding under Rule 4:46-2. See Contini v. Bd. of Educ. of Newark, 286 N.J. Super. 106, 121 (App. Div. 1995). Thus, a summary decision is proper if the record demonstrates "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law." Burnett v. Gloucester Cty. Bd. of Chosen Freeholders, 409 N.J. Super. 219, 228 (App. Div. 2009) (quoting R. 4:46-2(c)). In assessing the Board's decisions on the summary decision motions, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

The record presented to the ALJ did not support a finding that Brown violated N.J.S.A. 40A:9-22.5(c) as a matter of law. To be sure, it is undisputed that Brown spoke to Sheehy about the May 7, 2013 bid on the tax sale certificate on Sheehy's property prior to the removal of the bid from the approved list on the May 21, 2013 revised resolution. Moreover, the evidence showed Brown was aware of the removal of the bid from the resolution and exercised his official duties as a Council member by voting on the resolution with knowledge the

14

Sheehy property tax sale certificate had been removed. In addition, Sheehy obtained an unwarranted financial benefit from the removal of the bid from the approval list. He was not qualified for removal from the list by either redeeming the certificate or having a contract of sale for his property but nevertheless was removed and therefore was never required to pay interest to a tax sale certificate purchaser.

The record, however, presents a fact issue as to whether Brown acted with a purpose to secure the unwarranted financial benefit for Sheehy. In Brown's submissions to the Board, he asserted that he was instructed by Gerbounka, who then served as the City's mayor, that any properties that were under contract of sale should be removed from the tax sale certificate bid approval list. Brown further asserted that Gerbounka told him Sheehy's property "was such a property." Thus, Brown disputed that he acted with a purpose to secure an unwarranted benefit for Sheehy and instead claimed he voted to approve the deletion of Sheehy's property believing it was properly removed because it was under contract to be sold.

There was also contradictory information before the ALJ and Board. Sheehy submitted a statement asserting he advised Brown only that he had "a possible buyer" for the property and that he would pay his taxes when the

property was purchased. In his statement, Sheehy did not state that he told anyone that he had a contract for the sale of his property.

The conflicting evidence precluded a summary decision finding Brown violated N.J.S.A. 40A:9-22.5(c), as well as a summary decision finding that he did not violate the statute. Whether Brown acted with the purpose required to establish a violation of N.J.S.A. 40A:9-22.5(c) was a disputed fact that could not properly be decided in a motion for summary decision. See, e.g., Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc., 181 N.J. 245, 271-72 (2004) (holding that where intent is a disputed issue of fact, summary judgment is "generally not appropriate"); Gray v. Press Commc'ns, LLC, 342 N.J. Super. 1, 12 (App. Div. 2001) ("[W]here a party's state of mind is critical, and there is a genuine critical issue of material fact as to the state of mind, summary judgment should be denied since the issue of state of mind does not readily lend itself to summary disposition."). We therefore vacate the Board's order finding Brown violated N.J.S.A. 40A:9-22.5(c), affirm the Board's order denying Brown's motion for a summary decision finding he did not violate the statute and remand for further proceedings.

We also consider the Board's order granting a summary decision finding Armstead, Cosby-Hurling, Koziol, Kolibas, Kuczynzki, Sadowski, Medina and

Yamakaitis violated N.J.S.A. 40A:9-22.5(c) and denying their motion for a summary decision finding they did not violate the statute. In our view, the information presented to the ALJ does not support a finding that, as a matter of law, Armstead, Cosby-Hurling, Koziol, Kolibas, Kuczynzki and Medina acted with a purpose to a secure for Sheehy an unwarranted advantage in violation of N.J.S.A. 40A:9-22.5(c). To the contrary, as the ALJ expressly noted, "Cosby-Hurling, Armstead, Koziol, Kolibas, Kuczynski and Medina did not realize that Sheehy's property was excluded from the tax sale list when they approved the resolution." We are convinced that no rational fact-finder could conclude that these appellants acted with a purpose to secure an unwarranted benefit for Sheehy because they were unaware Sheehy's property had been removed from the list before they voted on the resolution. We therefore reverse the Board's order finding Cosby-Hurling, Armstead, Koziol, Kolibas, Kuczynski and Medina violated N.J.S.A. 40A:9-22.5(c) and denying their motion dismissing the charge against each of them.

The record presented to the ALJ also did not permit a disposition of the cross-motions for a summary decision as to whether Sadowski and Yamakaitis

17

violated N.J.S.A. 40A:9-22.5(c).[8] The information presented to the ALJ shows only that they voted to approve the May 21, 2013 resolution and little else. Based on that scant record, it was and is not possible to determine if they voted to approve the resolution with the purpose of securing an unwarranted benefit for Sheehy. See Pascack Cmty. Bank v. Universal Funding, LLP, 419 N.J. Super. 279, 295 (App. Div. 2011) (reversing order granting summary judgment where "the record was plainly insufficient to warrant summary judgment in [the moving party's] favor"). We therefore vacate the Board's order finding Sadowski and Yamakaitis violated N.J.S.A. 40A:9-22.5(c), affirm the order denying their motion dismissing the charges against them and remand for further proceedings.

In A-5528-16, we reverse the Board's summary decision order finding Brown violated N.J.S.A. 40A:9-22.5(c), affirm the Board's order denying Brown's motion for a summary decision dismissing the charge he violated N.J.S.A. 40A:9-22.5(c) and remand for further proceedings. We do not retain jurisdiction.

In A-0172-17, we reverse the Board's order finding Armstead, Cosby-Hurling, Koziol, Kolibas, Kuczynzki, Medina violated N.J.S.A. 40A:9-22.5(c),

---

[8] Sadowski declined to submit a statement to the Board during its investigation but denied any wrongdoing. Yamakaitis failed to respond to the Board at all.

reverse the Board's order denying their motion to dismiss the charges against them, vacate the Board's order finding Sadowski and Yamakaitis violated N.J.S.A. 40A:9-22.5(c) and affirm the order denying Sadowki's and Yamakaitis's motion to dismiss the charges against them and remand for further proceedings as to Sadowski and Yamakaitis. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19